Saime Case. — Application for a Re-iiearing.
The community of acquests, is the creature of the law of Louisiana, and the interest of the wife therein, cannot be divested by her removal from this State. To say, that though the community is dissolved, by the removal of the spouses into another State, as to all future acquisitions, but that it continues to exist as to the property acquired during their residence in this State, and that the husband, as the head of the community, retains the right of selling such property, is fallacious. The community, which commenced from the moment that the parties removed into this State, naturally ceased to exist from the time when their removal from it exempted them from the dominion of the laws of Louisiana. From that period, the legal partnership was dissolved, and the property acquired during its continuance, was held by the spouses in common, subject to the payment of the community debts. The power of a husband to sell the community property, is given to him by the laws of this State, as an incident to the community, and it ceases to exist from the moment that the latter is at an end.
Wilde, in support of the application. The community of acquests, and the rights of parties under it, must be considered as springing either from law, or contract. If from the latter, it travels with the parties and follows them to the grave — no law can affect it; if from the former, it must cease to exist, when the parties remove beyond the limits within which it prevails. To declare that the community ceases to exist as to future acquisitions, from the time of the removal of the parties to another State, but that the husband continues to have the power of disposing of the community property, would be to give to the laws of this State not only an extra-territorial, but a partial and imperfect effect.
Bullard, J.
Two principal questions have been discussed *368 by the learned counsel for the appellees, in their petition for a re-hearing.
1. What is the legal effect of the cancelling of the sale, from Samuel Packwood to David Stewart, on the restitution of the notes given for the price of the undivided half of the plantation and slaves, in the parish of Plaquemine ?
2. What was the legal effect of the removal of Packwood and wife from Louisiana, with regard to the property acquired during their residence here?
These questions, and the opinion of the court on them, have been discussed so earnestly, that they merit some further notice from us.
I. It is contended, that on the cancelling of the sale to Stewart by Packwood, the property reverted back to Packwood in the same manner as if it never had been sold. But it must not be forgotten that, at that time, Mrs. Packwood had been dead several years ; that Packwood no longer represented the community, much less the heirs of his wife, and could not without their consent re-invest in them a title to one-half of the property, which they assert belonged to Mrs. Packwood before her death. Hence they have never pretended that one-half of the plantation belongs to the heirs, in virtue of the cancelling of the sale by Packwood alone. It has never been put on any inventory of the estate, nor required to be so. The heirs have contented themselves with claiming one-half of the amount of the notes originally given by Stewart, and which were returned to him on the cancelling of the sale. Now, admitting for the sake of this argument, that one-half of those notes belonged to Mrs. Packwood as her separate property, and that Packwood, by making use of them For his own benefit, became accountable to her representatives, yet they were at that time domiciled in New York ; and it is now well settled, that personal property has no other situs than the domi-cil of the owner. Such a fund, we think, does not form a part of the succession of Alice Packwood, which has been confided to the appellant, to be administered here under the authority of the Court of Probates. If, according to the laws of New York, it was the separate property of the wife,- of which we are not informed, it is clearly to be disposed of as a part of her estate, according to *369 the laws of that State, and not according to those of Louisiana. Let us suppose that those notes, after the death of Mrs. Pack-wood, had been exchanged for stocks in New York, the domicil of Packwood: will it be contended that he, acting as executor in Louisiana, would be bound to'account for them here, where they form no part of her estate? If the same thing had been done in her lifetime, instead of giving up the notes afterwards on the cancelling of the sale, the stocks thus purchased in New York, would clearly not have become a part of the community on the death of Mrs. Packwood. If the fund had been employed in the purchase of other real estate, even in Louisiana, in the lifetime of Mrs. Packwood, it is clear it would not have become community property, after the parties had changed their domicil tp New York, and after the law of this State had ceased to operate, so as to create a community ; the existing law requiring in order to produce such an effect, in relation to marriages contracted abroad, the residence of both the husband and wife in Louisiana.
There is no doubt, that, in cases of retrocession, properly speaking, the effect is, to re-invest the title as if no alienation had taken, place. But that pre-supposes, that the capacities of the contracting parties remain unchanged. Now, according to the pretensions of the heirs of Mrs. Packwood, her right to one-half of the notes, representing the price of the plantation, became on her death irrevocably vested in her heirs ; and we repeat that Pack-wood ceased to represent a community, and the heirs of the wife.
II. Upon the second point, we are by no means satisfied that we erred in relation to the effect which the removal of Packwood and wife from Louisiana, had upon the property acquired here during their residence in Louisiana; and we adhere to the opinion first expressed, that the separate right of the wife to one-half, did not vest, so as to place one-half of the property beyond the control of the husband, by their change of domicil.

Re-hearing refused.